# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

---

## NO. 03-24-00319-CV

---

**Dione Childress, Appellant**

**v.**

**Alex S. Tradd II, as Independent Executor of the Estate of Robert Carson Caldwell, Appellee**

---

### FROM THE PROBATE COURT NO. 1 OF TRAVIS COUNTY
### NO. C-1-PB-21-000349, THE HONORABLE GUY S. HERMAN, JUDGE PRESIDING

---

## M E M O R A N D U M   O P I N I O N

Alex S. Tradd II, in his capacity as the independent executor of the Estate of Robert Carson Caldwell, sued Dione Childress for conversion of estate property and damages to the estate. Childress filed a counterclaim for back pay for her service as Caldwell's caretaker. The probate court granted Tradd's motion for summary judgment and dismissed the counterclaim. Childress, proceeding pro se, raises many issues on appeal but only two are cognizable: whether the probate court erred by granting summary judgment in Tradd's favor and by denying her the opportunity to present evidence to contest the summary judgment. We will affirm.

## BACKGROUND

Childress lived with Caldwell in a house Caldwell owned. She at various times referred to herself as his roommate, family caregiver, domestic companion, dependent, best friend

and "like a daughter." In April 2020, Tradd, an attorney who had known Caldwell for forty years, drafted his will. In it, Caldwell appointed Tradd as independent executor of his estate; acknowledged he had never been married or had children; and left his entire estate, in equal shares, to three charities. Both Childress and Tradd's wife were attesting witnesses to the will. On October 14, 2020, Caldwell died.

Tradd filed an application to probate the will. Childress contested the will, maintaining that it had been forced upon Caldwell. Childress asserted that she, as Caldwell's common–law wife, was entitled to his property, which he had passed to her by oral gift, and she, as his caregiver, was entitled to back pay.

After Tradd learned that Childress removed some of Caldwell's property, he demanded its return. In November 2020, Tradd obtained a temporary injunction from the probate court enjoining Childress from expending Caldwell's funds, disposing, removing, or hiding his personal property, entering his real property, or operating his vehicles. Nevertheless, Childress continued to reside in the house, forcing Tradd to pursue two eviction proceedings.

Tradd filed the conversion suit underlying this appeal in February 2021. In this suit, Tradd alleged damages (loss of assets and attorney's fees) incurred by the estate to be at least $83,594.05. The damages included Childress's removal of Caldwell's funds from his bank accounts and assets such as vehicles; legal fees from the estate's two eviction proceedings; legal fees for the conversion suit; and lost opportunity for rent. Tradd also sought an affirmative injunction that Childress account for and return to the estate all of Caldwell's assets in her possession or control.

While Tradd's conversion suit was pending, the probate court granted a motion for summary judgment in the probate proceeding that Childress take nothing on her will contest and back pay claim against the estate.

In the conversion suit, Childress failed to respond to discovery requests or show up for her scheduled deposition. Tradd filed a traditional motion for summary judgment on the conversion claim and moved to dismiss Childress's counterclaim based on res judicata as a result of the summary judgment in the probate proceeding. On March 21, 2024, the summary–judgment motion was set for a hearing on April 12, 2024. On March 26, 2024, Childress filed a motion for continuance, saying she, as a pro se litigant, needed more time to prepare for the hearing, referencing emails between Caldwell and Tradd leading up to the will creation—emails she argued would create a genuine issue of material fact. On April 8, 2024, less than seven days before the scheduled hearing, Childress filed a written response. She had not sought leave of court to file the late response. In it, she repeated the assertions from the will contest that the will was invalid and Caldwell had told her that he was leaving everything to her. She referred to supporting evidence but did not attach the evidence to her motion. She filed amended responses on April 8 and April 11, also without seeking leave of court.[1]

Tradd objected to Childress's responses as untimely under Rule 166a(c) and moved to strike them. He also objected that the following alleged statements by Caldwell do not meet the standard for opposing affidavits set forth in Rule 166a(f):

- "I was told by [Caldwell] himself on August 16, 2020 that this will be my home forever unless I want to move out one day and then it would be for his charity to house homeless veterans along with his other properties";

---

[1] These amended responses are not in the clerk's record.

3

- "[Caldwell] had made an offer to Childress when they first met. They made an agreement that for her assistance with daily housekeeping, running errands, cooking, making sure all bills were paid, banking, maintenance and renovations, that he would pay for her oral surgery and hernia operation";

- "On August 16, 2020 [Caldwell] told [Childress] she could live in their house as long as she wants to. It is her forever home. He also told her that his rental properties would be her forever income and to promise to help veterans that were homeless"; and

- "Childress continued to occupy Decedent's property because [Caldwell] told her she never had to leave, that it is her home as long as she wants"

Tradd argued the statement of facts was presented in bad faith and for purposes of delay, given the court's June 2023 order disposing of the will contest, and that the statements purported to contradict facts deemed admitted by Childress's failure to respond to Tradd's requests for admissions. *See* Tex. R. Civ. P. 166a(c), (f), 198.3. Tradd, in his reply to the responses, argued that the conversion claim was conclusively established by the deemed admissions and that the damages and attorney's fees were established by properly sworn affidavits.

At the summary–judgment hearing, the probate court denied the motion for continuance; sustained Tradd's objections to Childress's summary–judgment responses and struck them from the record; granted Tradd's motion for summary judgment; issued an order for actual damages and reasonable attorney's fees; and dismissed Childress's counterclaim with prejudice. The probate court did not address the request for injunctive relief. Childress appealed the interlocutory order granting summary judgment.

In June 2024, the case proceeded to a bench trial on the request for injunctive relief in the conversion suit and on August 2, 2024, the trial judge signed the Final Judgment confirming the relief granted in the interlocutory summary judgment and granting additional injunctive relief. If, as here, an order on interlocutory appeal merges into a final judgment, the court of appeals must

4

treat the initial appeal as if it were an appeal from a final judgment. *Chen v. Razberi Techs., Inc.*, 645 S.W.3d 773, 782 (Tex. 2022) (citing Tex. R. App. P. 27.3).

## ANALYSIS

### *Cognizability of Issues*

Pro se litigants are afforded liberal construction of their pleadings, but this leniency does not exempt them from complying with procedural and evidentiary rules applicable in summary–judgment practice and appeals. *See Wheeler v. Green*, 157 S.W.3d 439, 444 (Tex. 2005); *Mansfield State Bank v. Cohn*, 573 S.W.2d 181, 184–85 (Tex. 1978). Two rules govern here. First, Rule 166a of the Texas Rules of Civil Procedure provides, "A motion for summary judgment must be in writing, and "[i]ssues not expressly presented to the trial court by written motion, answer or other response shall not be considered on appeal as grounds for reversal." Tex. R. Civ. P. 166a(c). Second, Rule 38.1 of the Texas Rules of Appellate Procedure requires an appellant's brief to "contain a clear and concise argument for the contentions made, with appropriate citations to authorities and to the record." Tex. R. App. P. 38.1(i). In this case, Childress sets out eight issues.[2]

Most of these issues are inadequately briefed. As Tradd notes, Childress provided no citations to the record, no citation or inadequate citation to authority, and/or no argument for any of these issues. One case she relied on does not exist; a statute is cited in an entirely wrong

---

[2] Childress complains about (1) the probate court's acceptance of Tradd's "false documents and fraudulent statements"; (2) the probate court's "[d]enial of the opportunity to present crucial evidence"; (3) Tradd's "exploit[ation] of procedural complexities and legal technicalities"; (4) the probate court's bias and prejudice in favor of Tradd because of her "pro se" status; (5) the probate court's reliance on "her lack of knowledge and resources rather than the merits of the case" and its refusal to allow her to introduce her evidence; (6) the probate court's finding of no genuine issues of material fact even though she has "credible, tangible evidence that will contribute to the outcome of the case"; (7) the probate court's decision to award damages in contradiction of Caldwell's final wishes; and (8) Tradd's "false statements on affidavits."

context. The statement of facts is an abstract recitation of various laws. The argument section relists issues with no law. Nevertheless, construing the pleadings liberally, we find two issues cognizable here.

First, we understand her to complain that the probate court erred by determining that Tradd was entitled to judgment as a matter of law because, in her view, there were genuine issues of material fact precluding summary judgment in Tradd's favor. Second, we understand Childress to complain that the probate court erred by denying her motion for continuance without considering evidence she could obtain that was sufficient to support the request.

All other issues, besides being inadequately briefed, we find unpreserved. They were not made known to the trial court by way of "a timely request, objection, or motion." *Seim v. Allstate Tex. Lloyds*, 551 S.W.3d 161, 164 (Tex. 2018); *McConnell v. Southside Indep. Sch. Dist.*, 858 S.W.2d 337, 343 (Tex. 1993); Tex. R. App. P. 33.1(a); Tex. R. Civ. P. 166a(c).

### *Traditional Summary Judgment*

#### *Applicable Law and Standard of Review*

We review a trial court's ruling on a motion for summary judgment de novo. *Travelers Ins. v. Joachim*, 315 S.W.3d 860, 862 (Tex. 2010). When reviewing a summary judgment, we view the evidence in the light most favorable to the nonmovant, crediting evidence favorable to that party if a reasonable factfinder could, and disregarding contrary evidence unless a reasonable factfinder could not. *Mann Frankfort Stein & Lipp Advisors, Inc. v. Fielding*, 289 S.W.3d 844, 848 (Tex. 2009). The appellate court will not consider evidence that favors the movant's position unless it is uncontroverted. *Great Am. Rsrv. Ins. Co. v. San Antonio Plumbing Supply Co.*, 391 S.W.2d 41, 47 (Tex. 1965).

6

To prevail on a traditional summary-judgment motion, the movant must show that no genuine issue of material fact exists and that the trial court should grant judgment as a matter of law. Tex. R. Civ. P. 166a(a), (c); *Provident Life & Accident Ins. v. Knott*, 128 S.W.3d 211, 216 (Tex. 2003). The trial court may not grant a summary judgment by default for lack of an answer or response to the motion by the nonmovant when the movant's summary–judgment proof is legally insufficient. *City of Houston v. Clear Creek Basin Auth.*, 589 S.W.2d 671, 678 (Tex. 1979). The movant still must establish his entitlement to a summary judgment on the issues expressly presented to the trial court by conclusively proving all essential elements of his cause of action or defense as a matter of law. *Id*. Summary judgment must issue where discovery responses, supporting affidavits, pleadings, or other authenticated documents on file at the time of the hearing show that "there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law." Tex. R. Civ. P. 166a(c).

*Application*

To establish a claim for conversion of personal property, a plaintiff must prove that: (1) the plaintiff owned or had legal possession of the property or was entitled to possession; (2) the defendant unlawfully and without authorization assumed and exercised dominion and control over the property to the exclusion of, or inconsistent with, the plaintiff's rights as an owner; (3) the plaintiff demanded return of the property; and (4) the defendant refused to return the property. *Smith v. Maximum Racing, Inc.*, 136 S.W.3d 337, 341 (Tex. App.—Austin 2004, no pet.). A plaintiff must prove damages before recovery is allowed for conversion. *United Mobile Networks, L.P. v. Deaton*, 939 S.W.2d 146, 147 (Tex. 1997).

*Tradd owned or had legal possession of the property or was entitled to possession.*

Tradd presented adequate, competent summary–judgment evidence that Caldwell's will named him the independent executor of Caldwell's estate, he was "currently serving" in that role, and he had obtained an order granting summary judgment in the will contest which confirmed that role. As the executor of Caldwell's estate, Tradd had "the right to possession of the estate as the estate existed at the death of the testator or intestate" and the duty to "recover possession of the estate and hold the estate in trust to be disposed of in accordance with the law." Tex. Est. Code § 101.003.

*Childress unlawfully and without authorization assumed and exercised dominion and control over the property to the exclusion of, or inconsistent with, Tradd's rights as an owner.*

Tradd presented adequate, competent summary–judgment evidence that following Caldwell's death, Childress continued to live in Caldwell's house with access to his personal property and bank accounts; Tradd informed Childress she was not to remove or dispose of Caldwell's property; Childress was later enjoined by the probate court from removing or disposing of Caldwell's property and from entering Caldwell's real property; Childress nevertheless took funds from Caldwell's accounts, and took property belonging to the estate of Caldwell from Caldwell's house; and Childress also had to be evicted twice and forcibly removed from Caldwell's real property. Childress's deemed admissions include that she "took funds from the accounts of Robert Caldwell after he died for her own use"; "disposed of Robert Caldwell's red Ford pickup truck"; had "taken property belonging to the estate of Robert Caldwell"; "did not deposit rent checks or cash received from the tenants at 1304 Lipan Trail, Austin, Texas into a Robert Caldwell bank account"; and "used all or part of the rental income from 1304 Lipan Trail

8

for her own personal use." Tradd also produced evidence that the tenants paid $2,000 per month in rent to live at the Lipan Trail house.

*Tradd demanded return of the property.*

Tradd presented adequate, competent summary–judgment evidence that the day after Caldwell died, he informed Childress that she was not to remove or dispose of his property; Tradd demanded the return of Caldwell's property in a letter delivered to Childress on October 21, 2020; and Tradd obtained a temporary injunction in the probate proceedings requiring Childress to "immediately account for and turn over to court-appointed Temporary Administrator all assets in [her] possession or control that belonged to [Caldwell]."

*Childress refused to return the property.*

Tradd presented adequate, competent summary–judgment evidence that Childress has not returned Caldwell's personal property (including cash, a boat and trailer, three gold coins, a shop trailer, and the titles to two vehicles) and Childress had to be evicted twice and forcibly removed from Caldwell's real property.

*The estate suffered damages.*

Tradd produced an accounting of the value of damages supported by his affidavit, including the aforementioned missing cash, boat and trailer, gold coins, shop trailer, and two vehicles, along with bank records, his attorney's affidavit, and Childress's tenant's indigency statement reflecting rent paid.

9

*Tradd established his conversion claim.*

Tradd presented undisputed summary–judgment evidence conclusively establishing each element of his conversion claim; thus, the burden shifted to Childress to raise an issue of material fact. Childress failed to dispute the evidence supporting Tradd's motion that established each element of conversion or to raise an issue of material fact as to any conversion element. Tradd was therefore entitled to summary judgment as a matter of law. Tex. R. Civ. P. 166a(c). We overrule Childress's complaint that the trial court erred by granting summary judgment.

## Denial of the "the opportunity to present crucial evidence"

### *Applicable Law and Standard of Review*

"The trial court may order a continuance of a summary judgment hearing if it appears 'from the affidavits of a party opposing the motion that he cannot for reasons stated present by affidavit facts essential to justify his opposition.'" *Joe v. Two Thirty Nine Joint Venture*, 145 S.W.3d 150, 161 (Tex. 2004) (quoting Tex. R. Civ. P. 166a(g)). We review a trial court's ruling on a motion for continuance for an abuse of discretion; a trial court abuses its discretion when it acts in an arbitrary or unreasonable manner or without reference to any guiding rules or principles. *BMC Software Belg., N.V. v. Marchand*, 83 S.W.3d 789, 800 (Tex. 2002). In this context, we consider a variety of factors, including "the length of time the case has been on file, the materiality and purpose of the discovery sought, and whether the party seeking the continuance has exercised due diligence to obtain the discovery sought." *Two Thirty Nine*, 145 S.W.3d at 161.

*Application*

*The length of time the case had been on file.* On February 21, 2021, Tradd filed the conversion suit. On February 20, 2024, Tradd filed the summary–judgment motion. Thus, the case had been on file for three years by the time the summary–judgment motion was filed, and Childress had received the 21-day notice of the hearing required by Rule 166a(c) before filing her motion for continuance on March 26, 2024, in advance of the April 12 hearing. *Stierwalt v. FFE Transp. Servs., Inc.*, 499 S.W.3d 181, 190 (Tex. App.—El Paso 2016, no pet.) (trial court does not abuse discretion by refusing to grant continuance of summary–judgment hearing when case had been on file for over year before summary–judgment motion filed); *Cypress Creek EMS v. Dolcefino*, 548 S.W.3d 673, 687 (Tex. App.—Houston [1st Dist.] 2018, pet. denied) (trial court does not abuse discretion by refusing to grant continuance of summary–judgment hearing when party has received 21 days' notice required by Rule 166a(c)).

*The materiality and purpose of the discovery sought.* It is hard to discern, from either the motion for continuance or the argument at the summary–judgment hearing, the materiality and purpose of the discovery Childress sought. In her motion, Childress mentioned the emails that she alleged would prove the invalidity of the will. At the summary–judgment hearing, Childress argued that she needed time to collect evidence to raise fact issues on the elements of Tradd's conversion claim. But absent specifics, the probate court may have reasonably determined that the discovery sought would not be material. *See Guzman v. City of Bellville*, 640 S.W.3d 352, 358 (Tex. App.—Houston [14th Dist.] 2022, no pet.); *Life Forms, Inc. v. Woodlands Operating Co., L.P.*, 304 S.W.3d 591, 601 (Tex. App.—Beaumont 2010, pet. denied). This is especially true because on June 7, 2023, in the probate proceedings, the court had entered a summary–judgment order that Childress take nothing on her will contest and claims against the estate. Childress did

11

not appeal the order granting summary judgment, and it thus became final on July 7, 2023, some eight months before the scheduled summary–judgment hearing in this case.

*Whether the party seeking the continuance has exercised due diligence to obtain the discovery sought.* At the summary judgment–hearing, counsel for Tradd argued that the time for discovery had long since passed, and "when the executor attempted to do discovery by sending interrogatories, requests for production, request for admissions, and a deposition to which Ms. Childress was noticed and also subpoenaed, she has a hundred percent failed to respond to any of that discovery." The probate court orally denied the motion for continuance. The probate court then heard argument on Tradd's objections to Childress's summary–judgment responses, which elucidates the probate court's implicit finding of Childress's lack of due diligence. Childress argued that she had good cause for her late responses: she was pro se, she misunderstood Rule 166a(c), and she did not understand that she had to file her response not later than seven days prior to the day of hearing. Childress stated she was pressed for time because she "was in the middle of being evicted." The probate court noted she had no right to be in the house in the first place because the will did not leave it to her.

Given the extensive history of this litigation, the probate court's experience with the will contest, the unclear materiality of the information Childress sought or what Childress expected to prove with the information, we cannot conclude on this record that the probate court abused its discretion by denying the motion for continuance. The decision not to allow Childress more time for discovery was within the probate court's discretion. *See Tenneco Inc. v. Enterprise Prods. Co.*, 925 S.W.2d 640, 647 (Tex. 1996). We overrule Childress's complaint about the denial of "the opportunity to present crucial evidence."

12

## CONCLUSION

Having overruled the issues that we find cognizable, we affirm the probate court's judgment.

_____

Chari L. Kelly, Justice

Before Chief Justice Byrne, Justices Triana and Kelly

Affirmed

Filed:   March 19, 2026